Curia, per

Evans, J.
The only question which seems to be necessary I should consider in this case is, whether there is any reason to believe the jury have mistaken the character of the prisoner’s crime, and found him guilty of murder when he has been guilty of no higher offence than manslaughter. The main matter to be ascertained was, whether the killing was of malice, or whether it was referable to a recent sufficient provocation, wholly distinct and unconnected with the hatred which the prisoner seems to have entertained towards the deceased.
In the discussion of these questions, it has been pressed upon us with great earnestness, that the evidence does not warrant the conclusion that Pitts was on the outside of the fence at the time he was shot, and that his dead body had been brought and laid where it was seen by the witnesses, as some of them seemed to suppose. I am free to admit that the facts, from which this inference is drawn, may be deceptive. The hole in the body, which was made, as the witnesses thought, by a bullet, may have been made by the three buckshot found in the rail; and the appearance on the ground of no traces of a struggle may have been effaced before the witnesses who were sworn arrived upon the ground. And if the verdict had nothing to sustain it but the supposition that Ford shot Pitts before the latter had entered the potato-patch, it might be that the prisoner should have another trial. Assuming the fact to be, that Pitts was without the fence, there can be no doubt of the correctness of the, verdict, because the evidence of the prisoner’s witnesses, being thus contradicted in a most important particular, would be entitled to no credit; and the case would stand as a homicide, committed by one entertaining malice, wholly unexplained, or mitigated, by any recent provocation. . It is very certain there were circumstances (however fallacious they may have been) detailed by the witnesses on the trial, and argued with earnestness to the jury, which might lead to that conclusion; and it may be, for any thing that I know or can know, that some *155 of the jury may have been of that opinion; but it does not follow from this that the same jurors, in the absence of proof on this point, may not, as they might well have done, have come to the same result from the other facts of the case. A verdict is the aggregate opinion of all the jurors, but the process of reasoning by which each one attains to the conclusion is often as different and as dissimilar as their faces; and this applies to all the concerns of human life, where the same inference may be drawn from different arguments.
But supposing Pitts to have been within the fence, does it follow from thence that the prisoner is not guilty of murder 1 It is easy to give definitions, and to say that murder is a killing with malice; and that killing in sudden combat, or immediately after, and before the blood has had time to cool, is manslaughter, if done without malice. If a simple case of either of these descriptions be presented, we shall have but little difficulty in referring it to its proper class; but the case is very different when the facts proved show a deep and settled hatred, a burning desire of revenge mixed up with a recent combat. 'The difficulty in such case is to assign the homicide to its proper cause; to decide whether it was committed under the sole influence of passion justly excited, or whether it was the carrying into effect of a settled and deliberate purpose. In such case there is no rule, and can be none, other than that the jury must draw their conclusion from the facts of the case, relying upon legal presumptions so far as these are applicable to the case. These presumptions are nothing more than inferences, which the experience of mankind has proved to be legitimate deductions from facts; and hence we find it has grown into a sort of legal axiom, that if one person’s death be occasioned by the hand of another, he is presumed to have done it of malice, unless the prisoner can show from evidence, or satisfactory inference from the facts, that his offence is of a mitigated character; and if this inference against the prisoner be drawn from the fact of unexplained killing, how much more strongly does it arise when the existence of previous hatred, malice and ill-will are proved against him. 24 Eng. Com. Law Rep., 280.
*156 How far the prisoner’s witnesses were to be believed, was a question for the jury. The position in which they stood to the prisoner, his power and influence over them, arising from their dependance upon him, might well excite some suspicion against their testimony; and when to this are added, that the condition of the prisoner afterwards is wholly irreconcileable with the enormous beating which these witnesses describe, and the state of excitement in which they must have been at witnessing such a scene, the jury might well have regarded their evidence as by no means satisfactory, in showing that the prisoner had acted on the recent provocation, and not on the ancient grudge. But even in cases of adequate provocation, it shall not avail if it was sought by the prisoner (1 Ea. 239) as a pretext to wreak his vengeance on the deceased. Pitts was a remarkably peaceable man. He had no knowledge, so far as we are informed, of Ford’s hostile spirit towards .him. If he had known of Ford’s threats, and especially of the occurrences of that morning, it is not likely he would have gone unarmed to the prisoner’s house, with a hostile purpose. McCaskill had told him Ford wished to see him. On the other hand, it is proved that, a year before, the prisoner told Murchison that if ever Pitts had the assurance to offer him his hand he would kill him. Not long before Pitts was killed, Ford told Martin he had deliberately cocked and presented his gun to kill Pitts, but he had desisted from the fear that some one might see. At another time, when Pitts was calling his hogs, Ford said he had a great mind to take his gun and go and slioot him. On the morning of the day on which Pitts was killed, the prisoner swore to McCaskill he would kill him the first time he saw him; and rode into the woods and called Pitts, with the apparent design of executing his threat. What is the natural inference from these facts 1 Why, that Pitts may have gone there with no hostile design, and that he was provoked by some taunt, or abuse of Ford, to the violence which he committed. This supposition is no way at variance with the evidence of the witnesses for the prisoner. Elizabeth Ford says, Pitts said something to her father which she did not hear, and before he could answer, Pitts caught him by the top of the head *157 and commenced beating him. She was at the distance of near twenty steps, in the house. Ford’s back was towards her.
Is it not almost certain that Pitts’s violence was occasioned by some abusive language used to him by Ford, which the witness at that distance did not hear? .
Upon the whole, it seems to me the prisoner has utterly failed to mitigate his crime from the guilt of murder, by showing, either by evidence, or fair inference from the facts, that the homicide was the result-of the recent provocation. And he cannot complain if the jury believed him in earnest when he swore to McCaskill in the morning, that he would kill Pitts the first time he saw him; and that the subsequent killing was but the tíarrying out of that deliberate purpose.
The motion for a new trial must therefore be dismissed.
Richardson, O’Neall, Earle, Butlér, and Wardlaw, JJ., concurred.